# UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## WACO DIVISION

|  |  |
|---|---|
| **EUREKA DATABASE SOLUTIONS, LLC,** | |
| Plaintiff | **Case No. 6:19-cv-576** |
| v. | **JURY TRIAL DEMANDED** |
| **HAIVISION NETWORK VIDEO INC.,** | |
| Defendant | |

## COMPLAINT FOR PATENT INFRINGEMENT

Plaintiff Eureka Database Solutions, LLC files this Complaint against Haivision Network Video Inc. for infringement of U.S. Patent Nos. 6,173,287 and 6,311,189 (collectively "the Asserted Patents").

## PARTIES

1.      Eureka Database Solutions, LLC is a Texas limited liability company with its headquarters and principal place of business at 1400 Preston Road, Suite 475, Plano, Texas 75093.

2.      Haivision Network Video Inc. is a Delaware corporation with offices in Austin, Texas, Portland, Oregon, Chicago, and global headquarters in Montreal, Canada.

3.      Haivision may be served through its registered agent, Corporation Service Company, 251 Little Falls Dr., Wilmington, DE 19808.

4.      Haivision supplies an enterprise video platform and video delivery systems that it markets and distributes directly and through value-added resellers, system integrators, distributors, and OEMs to customers and end users in this district, around Texas, and around the world.



## Performance Recording and Streaming
### Haivision Media Platform – Workgroup Edition

Stream and record multiple live HD sources for monitoring and assessment. The Haivision Media Platform Workgroup Edition is designed for teams that need to watch and record multiple synchronized HD video sources for review and analysis. This solution is ideal for research of all kinds, including usability testing, focus groups, simulations, and training.

**Multi-Source Recording**          **Multi-Source Viewing**          **Share Live and Recorded Sessions**

5.      Haivision video customers in this judicial district include Allstate Insurance, BP, SAP, and Citibank.

6.      Haivision products and services are designed to organize and index video content for distribution, searching, browsing, and retrieval and include Haivision Media Platform, Haivision Enterprise and Haivision Media Platform – Workgroup Edition, Haivision Multi-Site Monitoring, and Haivision VfiControl iPhone/iPad App.

## JURISDICTION AND VENUE

7.      Eureka brings this action for patent infringement under the patent laws of the United States, namely 35 U.S.C. §§ 271, 281, and 284-285, among others.  This Court has subject-matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a).

8.      General and specific personal jurisdiction is proper in this Court based upon Haivision's regularly conducted business giving rise to this action in Texas and in this judicial district.  Haivision has established minimum contacts with this forum such that the exercise of jurisdiction over Haivision comports with traditional notions of fair play and substantial justice.

9.      Haivision directly and through intermediaries (including distributors, retailers, system integrators, resellers, OEMs, and others) has committed acts of infringement in this district by making, using, testing, selling, importing into the United States, and/or offering for sale the accused products and services that infringe the Asserted Patents.

10.      Haivision advertises and sells infringing products and services to customers in this district and throughout Texas deriving substantial financial benefit from doing business in Texas.

11.      Haivision has committed acts of infringement in this judicial district and maintains a regular and established place of business in the district located at

4005 Banister Ln, Austin, TX 78704.

12.   Venue is proper in this judicial district pursuant to 28 U.S.C. § 1400(b).

## THE EUREKA PATENTS

13.   Haivision has infringed U.S. Patent Nos. 6,173,287 and 6,311,189.

14.   The '189 and '287 Patents relate to methods, apparatuses, and systems for efficient organization, indexing, and retrieval of multimedia content by annotating media, accessing an item of interest within a stored representation of data, ranking multimedia annotations of interest, and matching a query to a portion of media.

15.   Eureka is the assignee of all right, title, and interest in and to the '287 Patent, titled "Technique for Ranking Multimedia Annotations of Interest" (attached as Exhibit A).

16.   Eureka is the assignee of all right, title, and interest in and to the '189 Patent, titled "Technique for Matching a Query to a Portion of Media" (attached as Exhibit B).

17.   Eureka has the exclusive right to assert all causes of action arising under the Asserted Patents and the right to remedies for infringement thereof.

18.   The original assignee of the '189 Patent, Altavista Company, was one of the most popular search engines in the late 1990s.  It was created by research

scientists at Digital Equipment Corporation (the original assignee of the '287 Patent) and was the 11th most visited website in 1998.  Yahoo purchased Altavista in 2003.

### The Asserted Patents

19.    On January 9, 2001, the United States Patent and Trademark Office issued the '287 Patent for inventions covering, in one claimed embodiment, a method for accessing an item of interest within a particular one of a plurality of stored representations of data, the method comprising: a) searching a plurality of stored annotations corresponding to different items within the plurality of stored representations of data to locate an annotation of interest corresponding to the item of interest, the annotation of interest having an associated data identifier and an associated location identifier, the associated data identifier corresponding to the particular one of the plurality of stored representations of data, the associated location identifier corresponding to a location of interest within the particular one of the plurality of stored representations of data; b) searching a plurality of stored data identifiers associated with the plurality of stored annotations to locate the associated data identifier and an associated address identifier, the associated address identifier corresponding to an address of the particular one of the plurality of stored representations of data within the plurality of stored representations of data; and c) accessing the item of interest at the location of interest using the associated address identifier and the associated location identifier.

20.    The technologies recited in the claims of the '287 Patent provide inventive concepts and do not claim an abstract idea.  The inventive concepts are directed to a technical solution to solve a problem unique to data storage technology, by greatly enhancing and facilitating the operation of data storage technology.

21.    For example, embodiments of the claimed invention recite a method for accessing an item of interest within stored representations of data by using annotations, data identifiers, locations of interest and other computer-specific technology.  The inventions are directed to helping organizations solve the problem of allowing multimedia content to be easily stored on, and retrieved from, relatively inexpensive digital storage devices.  '287 Patent, col. 1, lines 16-17.

22.    The technology claimed in the '287 Patent presented new and unique advantages over the state of the art at the time.  Although the inventions taught in the claims of the '287 Patent have by today been widely adopted by leading businesses, at the time of the invention, the technologies were innovative.  At that time, organizations had little or no means of searching within multimedia content, organizing information about multimedia content, and delivering multimedia content in a ubiquitous manner.  See '287 Patent, col. 1, lines 11-64.

23.    In the Background of the Invention section of the specification, the inventors described the state of the art: large amounts of analog multimedia data that was being digitized to enable more efficient and cost-effective storage and retrieval.

Digital content provides the ability to store, search, browse, and retrieve multimedia content that may exist in distributed datastores.

24.    A problem the inventors recognized and solved by their inventions was that multimedia content owners had little or no means of searching the content, organizing information about multimedia content, and delivering multimedia content.  More specifically, there was little or no "means for searching inside streams of multimedia content (e.g., audio/video streams), adding meta-information to multimedia content (i.e., annotating multimedia content) for purposes of indexing within multimedia content, and providing universal access to indexed multimedia content over a variety of connection speeds and on a variety of client platforms."

25.    The growing volume of digitized multimedia content at the time of the inventions gave rise to a need for an efficient system and technique for augmenting digital content with metadata associated with portions of content that could be stored in association with the content, searched to locate portions of content of interest, and enable efficient retrieval, and delivery of relevant portions without the need for retrieving and delivering entire content streams that would then be searched for the particular portion of interest.

26.    The asserted claims of the '287 Patent are not directed to a method of organizing human activity, a fundamental economic practice long prevalent in our system of commerce, or a building block of the modern economy.  Instead, they are

limited to specific solutions for data storage technology.

27.    The technology claimed in the '287 Patent does not preempt all ways for accessing items within a stored representation of data.  For example, the claims do not preclude identifying the location of a stored document or other methods of searching for data that do not use all of the claimed steps and elements.

28.    The '287 Patent claims cannot be practiced by a human alone and there exists no human analogue to the methods claimed in the '287 Patent.  The claims are specifically directed to data storage, annotation, retrieval, and indexing technology and recite components such as annotations, data identifiers, locations of interest and other computer-specific technology that exist in the context of computer-based systems and cannot be practiced by a human alone.

29.    The particular combination of claim elements recited in the claims of the '287 Patent was not well-understood, routine, or conventional to a skilled artisan in the relevant field at the time of the inventions.

30.    The claimed subject matter of the '287 Patent describes novel techniques and methods for transforming digital multimedia content by storing annotations associated with content, searching stored annotations to locate a desired portion of content, and providing access to portions of multimedia content without the need for burdensome and time-consuming review of large multimedia streams to find particular portions of interest.

31.     The specifications of the Asserted Patents describe data elements for use in practicing the inventions that one of skill in the art at the time of the inventions (circa 1998) would recognize as not being generic.

32.     An "Object Table" is a data element in a meta database that lists all multimedia objects.  An Object Table comprises, in an exemplary embodiment, an assigned object identification number, which typically is a unique numeric or alphanumeric value, and object type (e.g., audio or video).

33.     Figure 8 exemplifies the structure and content of an Object Table:



FIG. 8

34.     A "Representation Table" stores representations, each assigned a unique identification number, corresponding to objects.

35.    Figure 9 exemplifies the structure and content of a Representation Table:



FIG. 9

36.    The patent specification describes an embodiment in which each of the representations in the object database of the meta database are assigned a representation identification number that is unique like the object identification numbers and typically is in numeric or alphanumeric form although other forms are permitted.

37.    An "Annotation Table" lists annotations in the object database. Examples of annotations include transcript, speaker, or keyframe.   Annotations generated for an object that represents an audio/video stream, for example, have a corresponding start and end time.

38.     Figure 10 exemplifies the structure and content of an Annotation Table:



FIG. 10

39.     The novel metadata structures and elements claimed in the '287 Patent were not generic database components well known to or understood by those of ordinary skill in the art at the time of the inventions.

40.     The novel techniques for performing operations on the metadata structures and operations claimed in the '287 Patent were not generic database components well known to or understood by those of ordinary skill in the art at the time of the inventions.

41.     The claimed subject matter of the '287 Patent describes systems and methods for transforming multimedia content into searchable, retrievable, and efficiently stored (enabling distributed storage and access) datastores associated in a

novel manner to enable operations that could not be performed on analog or digital multimedia content at the time of the inventions.

42.     On October 30, 2001, the United States Patent and Trademark Office issued the '189 Patent.  One claimed embodiment recites a method for matching a query to a portion of media, comprising: a) receiving a query relating to media of interest; b) searching, based upon the query, a plurality of annotation values to identify an annotation value within the plurality of annotation values which matches the query, each of the plurality of annotation values corresponding to a respective portion of a respective item of available media; c) identifying a start time of a media stream forming a first portion of a first item of available media corresponding to the identified annotation value; and d) providing the identified media stream start time in response to the query.

43.     The '189 Patent focuses on the structure, function, and operation of the Annotation Table and claims systems and methods for using it to query, identify, and provide access to multimedia content.

44.     The Annotation Table (see Figure 10) stores metadata associated with multimedia content.

45.     An Annotation Table was not a generic component in multimedia storage and streaming systems at the time of the inventions circa 1998 and generating and using an Annotation Table was not a well-understood methodology for

performing operations on stored multimedia content.

46.    The claimed subject matter of the '189 Patent provided an inventive augmentation to stored multimedia content by providing a searchable Annotation Table used to locate start times or other indicia of portions of multimedia content of interest.

47.    The technologies recited in the claims of the '189 Patent provide inventive concepts and do not claim an abstract idea.  The inventive concepts are directed to a technical solution to solve a problem unique to media streaming technology, by greatly enhancing and facilitating the searching, identifying portions of, and providing access to multimedia data streams.

48.    For example, embodiments of the claimed invention recite a method for matching a query to a portion of media using queries and other computer-specific technology.  The inventions are directed to helping organizations solve the problem of allowing multimedia content to be easily stored on and retrieved from relatively inexpensive digital storage devices.  See '189 Patent, col. 1, lines 13-21.

49.    The '189 Patent provides a technique for matching a query to a slice of media.

50.    The technology claimed in the '189 Patent presented new and unique advantages over the state of the art at the time.  Although the inventions taught in the claims of the '189 Patent have by today been widely adopted by leading

businesses, at the time of the invention, the technologies were innovative.  At that time, organizations had little or no means of searching within multimedia content, organizing information about multimedia content and delivering multimedia content in a ubiquitous manner.  *See* '189 Patent, col. 1, lines 13-66.

51.    The claims of the '189 Patent are not directed to a method of organizing human activity, a fundamental economic practice long prevalent in our system of commerce, or a building block of the modern economy.  Instead, they are limited to specific solutions for data media streaming technology.

52.    The '189 Patent describes and claims methods and systems utilizing a non-abstract Annotation Table data structure having specific data elements necessary for providing the ability to perform pinpoint search, retrieval, and provision functions on stored multimedia content.

53.    The technology claimed in the '189 Patent does not preempt all ways for matching queries to media.  For example, the claims do not preclude matching the query to the media as a whole, or other methods of searching for data that do not use all of the claimed steps and elements.

54.    The '189 Patent claims cannot be practiced by a human alone and there exists no human analogue to the methods claimed in the '189 Patent.  The claims are specifically directed to matching a query to a portion of media using queries and other computer-specific technology that exists in the context of computer-based

systems and cannot be practiced by a human alone.

55.     The particular combination of claim elements recited in the claims of the '189 Patent (including in particular annotation values in an Annotation Table) was not well-understood, routine, or conventional to a skilled artisan in the relevant field at the time of the inventions.

## HAIVISION'S PRODUCTS



56.     Haivision has made, used, tested, sold, offered for sale, distributed, imported into the United States, licensed, and/or supported the accused video processing and serving platforms including, without limitation, the Haivision Media Platform, Haivision Enterprise, Haivision Media Platform – Workgroup Edition, Haivision Multi-Site Monitoring, Furnace, and the Haivision VfiControl iPhone/iPad App.

57.     Haivision committed acts of infringement with respect to each of these accused products during the terms of the Asserted Patents.

58.     The Haivision Media Platform is marketed under various branded names (e.g. workgroup edition, enterprise etc.) and versions.

# Haivision Media Platform



ENTERPRISE



SITE



WORKGROUP



## Haivision Media Platform

Organize, manage and share secure, high quality live and on-demand video to every employee, on any screen.

FIND OUT MORE



Help your teams record, analyze and review synchronized HD video sources for all kinds of research including usability testing, focus groups, simulations and training.

VISIT PAGE »



Securely distribute live and on-demand video, such as CEO all hands, company events and IPTV to employees watching from headquarters, remote offices, and on the road.

VISIT PAGE »

Compl

59.    Haivision advertises and promotes the accused products via its website

(e.g. https://www.haivision.com/products/haivision-media-platform/):



60.    The Haivision accused products such as the Haivision Multi-Site
Monitoring product feature indexing and content metadata tagging.

61.    Haivision HotMarks allow users to tag video moments with freeform
data.  HotMarks are applied directly to a video asset through a web interface or third-
party control systems.

62.    The accused products feature metadata tagging and HotMarks enabling
flexible searching of video content.

| Metadata Tagging & Hot Marks | Find the moments you are looking for through the use of powerful & flexible search tools. |
| --- | --- |

**Hai**vision    DATASHEET    **Hai**vision Multi-Site Monitoring

63.     Haivision Multi-Side Monitoring video platform provides multi-site viewing and features metadata tagging and HotMarks for indexing stored video content.

64.     Haivision publishes various user, administrator, integrator, and quick-start guides that accurately describe features and functionality of the accused



products.

65.     Haivision publishes information about the accused products on its website and online InfoCenter.

66.     Haivision publishes webinars and video content accurately describing the functionality and features of the accused products.



https://doc.haivision.com/HMP3.0

67.    In operation, the Haivision accused products quickly find all relevant clips in response to a search inquiry.  For example, clips can be categorized by surgical procedure, course title, geographical location or patient ID.

# Haivision                                                    haivision.com

## Configuring Metadata

Haivision Media Platform administrators can define metadata with selectable values to identify and store custom metadata. For example, videos, sessions, and sources may be categorized by surgical procedure, course title, geographical location, or patient ID number – whatever makes sense in your environment.

This metadata can be assigned to videos, sessions, and sources. From the Content Library and Portal, viewers can select metadata keys and values to filter the Videos, Sessions, or Sources list. For details, see Filtering Lists (Advanced Search) (in the User's Guide).

 **NOTE**
Viewers only see metadata assigned to videos for which they have access

To help you manage your metadata, you can organize metadata into groups, change the display order of metadata keys within the group, and sort groups within the list of keys. (Note that metadata cannot be sorted on mobile devices because they do not have the same drag and drop support as desktop Web browsers.)

To view and configure metadata:

1.  On the Administration screen, click **Configuration** on the toolbar and then click **Metadata** on the sidebar. The Metadata pane opens (as shown below). Any defined metadata keys are listed.

68.     Haivision metadata tools allow users to tag or "HotMark" key moments in a recording, making them easily searchable for reference or immediate playback.



### Powerful Metadata

Extensive file-based and real-time metadata makes content easy to find and manage. The Haivision Media Platform's powerful metadata tools allows users to tag or "HotMark" key moments in a recording, making them easily searchable for reference or immediate playback.

69.     Haivision promotes search and metadata tagging features of the accused products:

**Metadata Tagging**

Apply file-based and real-time metadata tags and keywords to make important content easy to find and manage.

Once a live video has been captured and recorded, further metadata can be included for describing the content allowing users to search for content without having to sift through potentially long video files.

https://www.haivision.com/resources/streaming-video-definitions/metadata/

70.     The metadata tagging features of the Haivision Workgroup Edition product track and manage important moments in the video.

71.     Haivision published the information below on its website to promote the benefits of metadata to track and manage portions of interest in video assets.

**Workgroup Edition**

**Performance Recording for Research Teams and Training Facilities**

The Haivision Media Platform **Workgroup Edition** is designed to enable teams to watch and record multiple synchronized HD video sources for review and analysis. Users can apply metadata to track and manage important moments in the video. This edition is ideal for research, including usability testing, focus groups, simulations, and training. The **Workgroup Edition** is available in 5-1, 25-1, and 50-1 versions, supporting from 5 to 25 to 50 concurrent recording streams.



72.    Haivision's VfiControl iPhone/iPad App features metadata tagging functionality.

73.    Haivision products feature metadata tagging of live and recorded video content to satisfy consumer demand.

# Research Recording

## VIDEO SOLUTIONS FOR RESEARCH, COLLABORATION, AND EDUCATION

Ideal for teams that need to capture and review multiple camera sources for observing events like product testing, focus groups, innovation labs, and training. Low-latency, high-quality video can be streamed live for real-time viewing and collaboration, and powerful metadata capabilities allow you to tag and easily find important moments in live and recorded videos.

74.    Haivision's VfiControl iPhone/iPad App is sold with functionality for tagging and reviewing.  Haivision announced the application in a press release in 2010.



75.   Haivision VFiControl features the capability of instantly going to points of interest within a video.

76.   Haivision Furnace features indexing and search capabilities enabling users to tag points of interest within a vide with predefined or freeform data.

77.   The following content published by Haivision accurately describes Haivision Furnace:

Haivision enables clients to capture media easily, and empowering the media library with real-time metadata helps to deliver intelligent video to the enterprise. From within an event room, theater, or stadium, users can login to the Furnace, select the video source, and initiate a network video recording. During the recording, the user can very simply tag moments with predefined or free form metadata. After the recording, the user can immediately review the video directly on their mobile device and commit the video asset to the Furnace video-on-demand system. Subsequently, from any computer, authorized users anywhere can review the video and instantly go to the points within the video that are of interest.

78.   Since 2010, Haivision products have included features enabling application of HotMarks to a video asset during the recording process.



## Haivision Releases Furnace 5.5 With HotMarks™ Real-Time Metadata Technology for Intelligent Video

*Furnace 5.5 Supports Real-Time Insertion of Time-Based Metadata for Easy Search and Review of Video Assets*

**MONTREAL and CHICAGO — March 3, 2010 —** HaiVision Network Video today announced the availability of FURNACE version 5.5. This landmark release of the FURNACE system incorporates support of in-line metadata (HotMarks™) allowing users to tag video moments with freeform data while recording. HotMarks can be applied directly to the video asset during the recording process either through the Web interface or via third-party control systems. FURNACE 5.5 also includes a complete application programming interface (API) for the network video recorder option. This allows third-party control devices to establish, control, and tag recording sessions on the fly.

https://www.haivision.com/about/press-releases/furnace-5-5-hotmarks-real-time-metadata-technology-intelligent-video/.

79.     The Haivision accused products provide a system for accessing an item of interest within a video stream.

80.     Users of the Haivision Media Platform can search for videos by entering keywords.

81.     The following tip published by Haivision accurately describes functionality of the Haivision Media Platform:



82.     Haivision accused products include a video library for storing and

organizing video assets.



83.     When a metadata search is performed, the Haivision accused product searches a plurality of stored annotations (e.g. HotMarks) corresponding to different items (specific point in videos) within the plurality of stored representations of data (e.g. Content Library) to locate an annotation of interest corresponding to the item of interest (e.g. HotMark for specific video).

84.     The following description of HotMarks published by Haivision accurately describes functionality of the accused products:

HotMarks provide a means for you to insert metadata, such as title and description, into a video in real-time. HotMarks are typically used to add captions and create shortcuts to selected points of interest in the video. You can insert HotMarks while recording a session as well as playing back a video, as you drag the scrub handle along the progress/scrub bar.

85.    In the Haivision accused products, an annotation of interest has an associated data identifier corresponding to the particular one of the plurality of stored representations of data (e.g. Asset ID for each video) and a location identifier corresponding to the location within each video (e.g. timestamp).

86.    Haivision stores metadata associated with specific video assets.

## Get Video Metadata

Last updated on Dec 27, 2018

Gets the metadata for the specified video. See Get a List of Session Metadata.    **Authorizations:** Recordings - VIEW

### Requests

```
GET /apis/assets/:id/metadata
```

87.    The Get Video Request references a universal unique data identifier (i.e., id):

## Requests

```
GET /apis/assets/:id
```

88.     The UUID (data identifier) refers to a stored video asset having attributes including title, description, and runtime.

```
{
  "data": {
    "id": "3bc946a6-6720-41c0-8246-55e8119d1a5a",
    "title": "New Session",
    "description": "",
    "active": false,
    "ctime": 1401997809,
    "mtime": 1401997809,
    "duration": 60.34700000000001,
    "recording": false,
    "trimming": false,
    "importing": false,
    "movieTrackCount": 1
  }
}
```

89.     The following description of HotMark functionality in the Haivision Media Platform is accurate:

## HotMarks

Last updated on Dec 27, 2018



HMP stores HotMarks that indicate points of interest in a video. Each HotMark is a metadata bookmark that allows viewers to reference points of interest in the video. From the REST API, programmers can add HotMarks to annotate a video (active or completed). See Create a HotMark on a Recording and Video HotMarks.

90.     Haivision stores HotMarks associated with video content.

91.     HotMark attributes include description, title, timestamp, and UUID.

## Get Specific HotMark Information
Last updated on Dec 27, 2018

Gets information about the specified HotMark for a video.

**Authorizations:** Recordings - VIEW

### Requests

```
GET /apis/assets/:id/hotmarks/:hotmarkId
```

```
{
  "data": {
    "title": "Hotmark POST Test",
    "description": "API added HM",
    "timestamp": 100000,
    "id": "0d75aa67-3866-4e74-a285-011e951ca0af"
    "username":"jsmith",
    "userDisplayName":"John Smith"
  }
}
```

92.     The following description of HotMark functionality in the Haivision

Media Platform is accurate:

### HotMarks
Last updated on Dec 27, 2018



HMP stores HotMarks that indicate points of interest in a video. Each HotMark is a metadata bookmark that allows viewers to reference points of interest in the video. From the REST API, programmers can add HotMarks to annotate a video (active or completed). See Create a HotMark on a Recording and Video HotMarks.

93.     The accused products search a plurality of data identifiers associated

with the plurality of stored annotations to locate a data identifier and an address (e.g.

a filepath) corresponding to a particular video in a content library.

94.    In normal operation of the accused products, a video asset is accessed at the location of interest using the address and timestamp (or other code indicating a position in the video timeline).



95.    In normal operation, the Haivision accused products search indexed content to locate annotations of interest.



96.     HotMarks may reference multiple values or annotations.

4.  To use the Metadata for HotMarks, check the checkbox. Note that "HotMarks" will serve as the group for the metadata.



-or-

In the Group field, type in the group for the metadata.

97.    HotMarks insert metadata into a video.

### Managing HotMarks

HotMarks provide a means for you to insert metadata, such as title and description, into a video in real-time. HotMarks are typically used to add captions and create shortcuts to selected points of interest in the video. You can insert HotMarks while recording a session as well as playing back a video, as you drag the scrub handle along the progress/scrub bar.

Multiple users can insert HotMarks, so color coding and user tagging allows you to quickly and accurately identify who made each entry. If HotMark Metadata is available for your system, you can also select Metadata values for the HotMark. You can also search for HotMark Metadata. [Metadata defined to be used for HotMarks is not available on the Metadata pane for the video, session or source.]

 **TIP**
You can search for videos by entering keywords from HotMark titles, descriptions, or metadata.

98.    HotMarks are associated with a specific recording.



99.    Haivision Accused Products include multi-word HotMarks.

6.  To modify the HotMark title, description or time, hover over the item in the HotMarks list and click **Edit**.



7.  On the HotMark Information dialog, edit the Title and Description fields as necessary and click **Save HotMark**.



100.   The accused products provide a method for matching a search to a portion of media.

101.   When a search is initiated, the Haivision accused products match a search request to a portion of media.

102.   Data and location identifiers corresponding to stored representations of data (e.g., object IDs for video content) are stored in a content library with media assets.

103.  The accused products access a video stream at a location of interest using the address and mark indicating a start time for a clip.

> Multiple users can insert HotMarks, so color coding and user tagging allows you to quickly and accurately identify who made each entry. If HotMark Metadata is available for your system, you can also select Metadata values for the HotMark. You can also search for HotMark Metadata. (Metadata defined to be used for HotMarks is not available on the Metadata pane for the video, session or source.)

104.  The Haivision accused products provide a method for searching for HotMarks.

### Managing HotMarks

HotMarks provide a means for you to insert metadata, such as title and description, into a video in real-time. HotMarks are typically used to add captions and create shortcuts to selected points of interest in the video. You can insert HotMarks while recording a session as well as playing back a video, as you drag the scrub handle along the progress/scrub bar.

Multiple users can insert HotMarks, so color coding and user tagging allows you to quickly and accurately identify who made each entry. If HotMark Metadata is available for your system, you can also select Metadata values for the HotMark. You can also search for HotMark Metadata. [Metadata defined to be used for HotMarks is not available on the Metadata pane for the video, session or source.]

 **TIP**
You can search for videos by entering keywords from HotMark titles, descriptions, or metadata.

105.  The Haivision accused products provide the capability to search for HotMarks within a video playback environment.

106.  In normal operation, the accused products search a plurality of annotation values (HotMark metadata) to identify an annotation value within the plurality of annotation values which matches the query.  Each annotation value corresponds to a respective portion (e.g. per timestamps) of a respective item of

available media.





107.   The accused products identify and provide a start time (timestamp) of a media stream (video playback) associated with the HotMarks returned by the query.



5. To display the HotMark, hover over the indicator (as shown in the following example).



## COUNT 1 - DIRECT INFRINGEMENT OF U.S. PATENT NO. 6,311,189

108.  Eureka realleges and incorporates by reference the allegations set forth in the preceding paragraphs as if set forth verbatim in this Count.

109.  Eureka is the owner, by assignment, of U.S. Patent No. 6,311,189, titled "Technique for Matching a Query to a Portion of Media."

110.  As the owner of the '189 Patent, Eureka holds all substantial rights in and under the '189 Patent, including the right to grant sublicenses, exclude others, and to enforce, sue, and recover damages for past and future infringement.

111.  The United States Patent Office granted the '189 Patent on October 30, 2001.

112.  The '189 Patent is valid, enforceable, and was duly issued in full compliance with Title 35 of the United States Code and a full examination by the Patent Office.

113.  Defendant has been practicing one or more claims of the '189 Patent,

including at least claims 1, 9-11 by making, using, monetizing, testing, offering for sale, selling, and/or importing the Haivision Accused Products provide indexing, annotations, coding, and the ability to search and display media.

114.  Haivision has directly infringed the '189 Patent by making, deploying, testing, using, providing, monetizing, and licensing the Haivision Accused Products.

115.  Haivision directly infringes the '189 Patent by making, using, selling, offering for sale, and/or importing the Accused Products that include the multimedia (e.g. video) marking, tagging, labeling, indexing, searching and displaying functionality.

116.  The Haivision Accused Products provide a method for matching a query to a portion of media.

117.  The Accused Products receive a query relating to media of interest (e.g. video content).  For example, the Haivision media platforms allow users to search for a particular tag.

118.  Defendant's infringing conduct described in this Count has damaged Eureka.  Haivision is liable to Eureka in an amount that adequately compensates it for infringement, which, by law, can be no less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

## COUNT 2 – DIRECT INFRINGEMENT OF U.S. PATENT NO. 6,173,287

119.  Eureka realleges and incorporates by reference the allegations set forth

in the preceding paragraphs as if set forth in this Count.

120.  Eureka is the owner, by assignment, of U.S. Patent No. 6,173,287, titled "Technique for Ranking Multimedia Annotations of Interest."

121.  As the owner of the '287 Patent, Eureka holds all substantial rights in and under the '287 Patent, including the right to grant sublicenses, exclude others, and to enforce, sue, and recover damages for past and future infringement.

122.  The United States Patent Office granted the '287 Patent on January 9, 2001.

123.  The '287 Patent is valid, enforceable, and was duly issued in full compliance with Title 35 of the United States Code after a complete examination by the Patent Office.

124.  Haivision has been  practicing one or more claims of the '287 Patent, including at least claims 1-4, 6, 7, and 10 by making, using, offering for sale, monetizing, selling, and/or importing the Accused Products that provide functionality including indexing, annotating, labeling, tagging, coding, and the ability to query and display media content.

125.  Haivision has directly infringed the '287 Patent by deploying, testing, using, monetizing, and operating Haivision Accused Products.

126.  Haivision directly infringes the '287 Patent by making, selling, offering for sale, and importing the Accused Products.

127.  The Accused Products use a method for accessing an item of interest within a particular one of a plurality of stored representations of data (e.g., video content or files).

128.  The Haivision Accused products search a plurality of stored annotations corresponding to different items within the plurality of stored representations of data to locate an annotation of interest corresponding to the item of interest.  For example, the media platforms identify an annotation of interest from among the videos.  A particular keyword has an associated data identifier (e.g., the textual representation) and an associated location identifier (e.g., a timestamp).

129.  The Haivision Accused Products search a plurality of stored data identifiers associated with the plurality of stored annotations to locate the associated data identifier and an associated address identifier, the associated address identifier corresponding to an address of the particular one of the plurality of stored representations of data within the plurality of stored representations of data.  For example, the media platforms identify a particular instance, keyword, or label from a multitude of possible instances, keywords, or labels and locates an associated data identifier (e.g., the textual representation) and an associated address identifier.

130.  As a result of Haivision's infringing conduct described in this Count, Eureka has been damaged.  Defendant is liable to Eureka in an amount that adequately compensates it for Defendant's infringement, which, by law, can be no

less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

## PRAYER FOR RELIEF

Eureka prays for the following relief:

a) A judgment be entered that Defendant has directly infringed one or more claims of the Asserted Patents;

b) A judgment be entered that the Asserted Patents are valid and enforceable;

c) Eureka be awarded damages adequate to compensate for Defendant's infringement up until the date such judgment is entered, including prejudgment and post-judgment interest, costs, and disbursements as justified under 35 U.S.C. § 284 and, if necessary, to adequately compensate Eureka for Defendant's infringement, an accounting;

d) A judgment that Eureka be awarded attorneys' fees, costs, and expenses incurred in prosecuting this action; and

e) A judgment that Eureka be awarded such further relief at law or in equity as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Eureka Database Solutions, LLC demands trial by jury for all issues so triable pursuant to Fed. R. Civ. P. 38(b).

Filed: October 7, 2019

Cabrach J. Connor
Texas Bar No. 24036390
cab@connorkudlaclee.com
Jennifer Tatum Lee
Texas Bar No. 24046950
jennifer@connorkudlaclee.com
Kevin S. Kudlac
Texas Bar No. 00790089
kevin@connorkudlaclee.com
**CONNOR KUDLAC LEE PLLC**
609 Castle Ridge Road, Suite 450
Austin, TX 78746
Telephone:  512.777.1254
Facsimile:  888.387.1134

*Attorneys for Plaintiff*
Eureka Database Solutions LLC